JOINER, Judge.
Harold Hall appeals his conviction for unlawful distribution of a controlled substance, *761 see § 13A-12-211(a), Ala.Code 1975.
Facts and Procedural History
On March 11, 2013, Hall was indicted for distributing cocaine in violation of Section 13A-12-211(a), Ala.Code 1975. Hall's case was scheduled to begin on December 9, 2013. The record indicates that Hall appeared in court for voir dire but that he did not, however, appear at his trial. On appeal, Hall, who does not dispute the facts of his case, raises two claims-that he was denied the effective assistance of trial counsel and that the trial court, when it sentenced him, erroneously departed from the presumptive sentencing standards, see § 12-25-34.2, Ala.Code 1975.
The following discussion occurred immediately before the trial:
"THE COURT: All right. Okay. Obviously, Mr. Hall is not present. How would the State like to proceed?
"[THE STATE]: The State would like to go ahead and try this case. He did make himself present at the jury selection and has apparently voluntarily absented himself from these proceedings.
"THE COURT: Okay. [Defense counsel]?
"[DEFENSE COUNSEL]: We would like to ask for a continuance because my defense was based on two witnesses he was supposed to bring, and now my-I don't know how to proceed because now my whole defense strategy is blown out of the water. So I, basically, don't have a defense without those witnesses.
"[THE STATE]: Well, just because those witnesses aren't here, even if the defendant was here and they didn't show up-as far as I know, they weren't served with subpoenas, so that's not the issue.
"[DEFENSE COUNSEL]: Well, that's what I-they guaranteed me they would be here; they didn't need a subpoena.
"THE COURT: So they have told you they would be here?
"[DEFENSE COUNSEL]: Yes.
"THE COURT: Okay. Well, let's just go ahead and proceed. I find that he has voluntar[il]y absented himself from the proceedings. We've already selected a jury. He was here on Monday. He knew when we were to start, and we will just try him in absentia.
"....
"[DEFENSE COUNSEL]: Well, I would like to-I don't know what has happened to him.
"THE COURT: Have you tried to call him?
"[DEFENSE COUNSEL]: Yes, I have tried to call him. But I don't know, you know, if he's got involved in a wreck or something, in the hospital. But I have tried to call numerous times because he was to be at my office at eight o'clock. Okay? And it would be unfair to him to have a trial without a proper defense, because he has the right to be present.
"....
"THE COURT: Well, I don't think we have a choice but to have to go forward. Y'all help me write up something that you want-everybody can agree on the preliminary instruction. I don't think there is any kind of standard instruction for that. So-
"....
*762 "[DEFENSE COUNSEL]: Probably because it's not supposed to be done.
"THE COURT: Yes. Pursuant to the rule they can voluntar[il]y absen[t] themselves from a trial."
(R. 4-8.) Butler County Sheriff Kenny Harden informed the trial court that there had not been any recent reports of accidents involving Hall and that Hall was not present at either of his two known addresses.
The parties discussed a preliminary jury instruction regarding Hall's absence, and Hall's trial counsel stated her concern that the jury, regardless of an instruction to the contrary, would improperly presume that Hall was guilty if the trial continued in his absence. Ultimately, Hall's trial counsel objected "to the proceedings continuing" but did not object to the instruction itself. The trial court then found that Hall had "voluntarily absented himself from the proceeding," elected to try Hall in absentia, and issued a bench warrant for his arrest. (R. 15.)
The trial court gave the following instruction to the jury before commencing the trial:
"A defendant does have the right to be present at every stage of the trial, pursuant to Alabama Rules of Criminal Procedure. The defendant may waive the right to be present at any proceeding if the Court finds that his absence from the proceeding was voluntary and constitutes an understanding and voluntary waiver of the right to be present and that the defendant had notice of the time and place of the proceeding and was informed of the right to be present. The proceeding may then proceed and the defendant is tried in absentia.
"You may draw no inference or make any assumptions to the guilt or innocence of the defendant by his absence. And his absence is not evidence. Your verdict is to be based on the testimony and evidence presented during the trial."
(R. 16-17.)
Hall's defense counsel, when given the opportunity to make opening and closing arguments and to cross-examine the State's witnesses, repeatedly stated: "Defendant through his counsel objects to these proceedings occurring without the defendant because a proper defense cannot be presented because the defendant is absent and request[s] a continuance." (R. 27, 40, 48, 54, 62, 63-64, 70.) The trial court overruled each objection and denied each motion to continue, and the case proceeded.
The evidence at trial indicated that Hall sold crack cocaine to a confidential informant who was working with the Greenville Police Department. Officer Lionel Davidson, Lieutenant Byron Russell, and the confidential informant all testified that the informant purchased two white rocks from Hall during a controlled buy conducted under the supervision of Lt. Russell and Officer Davidson. Lt. Russell also testified that the transaction occurred within three miles of a school and within three miles of a public housing community. John Bruner, a drug chemist with the Alabama Department of Forensic Sciences, testified that Officer Davidson delivered the white rocks to him for scientific analysis. Bruner stated that he determined the rocks to be "cocaine-based, known as crack cocaine." (R. 60.)
After the State rested, Hall's counsel moved for a judgment of acquittal on the ground that "the State did not present [a prima facie case of unlawful distribution of a controlled substance] beyond a reasonable doubt." (R. 64.) Hall's counsel made no other objections during the trial and did not call any witnesses in Hall's behalf.
*763 After the jury returned the guilty verdict, the trial court determined that it would set Hall's sentencing hearing upon his arrest. Hall was eventually arrested, and the trial court conducted a sentencing hearing on February 20, 2014. At that hearing, the State presented evidence indicating that Hall had more than three prior felony convictions and recommended that the trial court sentence Hall to life imprisonment. Hall's counsel objected to "having [had] the trial in the first place" and also to the State's sentencing recommendation. (R. 97.) Hall himself objected to the State's sentencing recommendation, stating:
"As far as the presumptive sentence, the aggravating factors are part of the presumptive sentence. They're not part of the aggravating factors. They're encompassed inside of the presumptive sentencing; therefore, a proper sentence should be within the guidelines. The aggravating factors are not part of the prior felony conviction, are part of presumptive sentencing. The five and five-no sentence enhancement is supposed to depart outside of the guidelines. They're encompassed in the new sentencing guidelines."
(R. 97-98.)
The trial court sentenced Hall as follows:
"All right. Mr. Hall, I am departing from the presumptive sentencing recommendations, and I will be sentencing you under the Habitual Felony Offender Act within that sentencing scheme of 20 years to life. So I hereby sentence you to life imprisonment in the penitentiary in the State of Alabama. I'm also giving you five years for Section 13A-12-250, for being within a three mile radius of a school, and five years for Section 13A-12-270, for being within three miles of a housing project."[1]
(R. 100-01.) The trial court memorialized its sentence in a written order issued the same day.[2]
Hall's appointed trial counsel was permitted to withdraw on February 21, 2014. On March 10, 2014, appellate counsel was appointed for Hall, and counsel filed a motion for a new trial that requested simply that the trial court "reconsider the matter and order a new trial." (C. 107.) On March 12, 2014, Hall retained counsel who filed a notice of appearance and, on March 13, 2014, filed an amended motion for a new trial. The amended motion alleged, among other issues, that Hall was denied the effective assistance of counsel at trial and requested that the trial court "vacate [his] sentence under [the Habitual Felony Offender Act, § 13A-5-9, Ala.Code 1975,] and resentence him pursuant to the presumptive sentencing [standards]." (C. 112-19.) Hall also incorporated a motion for sentence reconsideration into his amended motion for a new trial in which he made the following claims: (1) that the trial court "committed a procedural error when it used ... 'aggravating circumstances' to depart from the sentencing [standards]" (R. 123); (2) that the trial court "committed substantive error by using these 'aggravating circumstances' to depart from the presumptive [standards]"
*764 (R. 124); and (3) that, "[b]ecause the sentencing [standards] say that departures should be rare and because [his] case is not an extraordinary case, [the trial court] should not have departed from the presumptive [standards]." (R. 125.)
On March 20, 2014, the trial court allowed Hall's appointed appellate counsel to withdraw, and the trial court set a hearing on Hall's amended motion for a new trial for April 4, 2014. The record, however, does not indicate that a hearing was held on that motion,[3] and the motion was denied by operation of law.[4] Hall timely appealed to this Court.
Hall, in his initial brief on appeal, contended that he was denied the effective assistance of trial counsel and that the trial court erred when it failed to sentence him pursuant to the presumptive sentencing standards. On May 18, 2015, this Court, by unpublished order, remanded this matter to the trial court instructing that court to hold "an evidentiary hearing regarding Hall's assertions of ineffectiveness of trial counsel" presented in his amended motion for a new trial and, on return of such action, to "include written findings of fact, conclusions of law, and a transcript of the proceedings." (Record on Return to Remand, C. 15.) The trial court complied with our order and held an evidentiary hearing on June 18, 2015. Following the hearing, the trial court issued a written order, stating:
"To prevail the defendant must satisfy the two-prong test established by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). At the hearing the defendant offered no evidence to support a claim of ineffective assistance, only argument that trial counsel did nothing. The first prong which the defendant must satisfy is that counsel's performance was deficient. The defendant must present evidence that the specific facts or omissions were not the result of reasonable professional judgment based on the circumstances at the time of trial. Trial counsel had filed pretrial motions to exclude the State's evidence, conducted voir dire, and moved for a judgment of acquittal at the close of the State's case and then renewed that motion after resting. At trial, faced with the defendant's voluntary absence, counsel objected to the proceeding in absentia and repeatedly moved this Court for a mistrial. The defendant has presented no evidence to this Court that trial counsel's repeated objections to the continuance of the trial in defendant's absence, aimed at obtaining a mistrial, and her decision not to reemphasize the State's evidence by cross-examination was not reasonable defense strategy given the circumstances in which the defendant's actions had placed her. Based on the Court's observance of counsel's actions at trial and the lack *765 of evidence by defendant to overcome the presumption that counsel performed effectively, the Court finds the defendant has failed to satisfy the first prong established under Strickland.
"Having determined that counsel's limited action at trial was the exercise of reasonable professional judgment under the circumstances and was not inadequate as a defense strategy, the Court will briefly address the second prong of Strickland, wherein the defendant must prove that the outcome of the trial would have been different but for trial counsel's ineffective assistance. The defendant has not demonstrated a reasonable probability that, but for trial counsel's actions, he would not have been convicted. The direct testimony of the drug task force agent, the confidential informant who made the drug buy, and the forensic analyst who tested the controlled substance, coupled with the audio/video recording of the drug buy and still photographs from that video, was overwhelming evidence of the defendant's guilt.
"The defendant has failed to present any evidence to support the claim of ineffective assistance and satisfy his burden as set out in Strickland. It is therefore ORDERED that defendant's claim of ineffective assistance of counsel and request for relief is hereby DENIED."
(Record on Return to Remand C. 18-19.) Following the trial court's order, Hall filed a motion to reconsider the denial of his amended motion for a new trial. In that motion, Hall claimed: (1) that the trial court "erred in not considering that [he] is entitled to relief under United States v. Cronic, 466 U.S. 648 (1984)" (Record on Return to Remand C. 21); (2) that the trial court "impermissibly rested on the strength of the State of Alabama's case against [him] to defeat concerns that his Sixth Amendment rights were violated" (Record on Return to Remand C. 22); and (3) that the trial court "impermissibly concluded that trial counsel's actions were 'strategy' under Strickland v. Washington." (Record on Return to Remand C. 23). The trial court denied Hall's motion.
On return to remand, this Court granted Hall's motion to submit a brief on return to remand. In his brief, Hall raised the same arguments he raised in his motion for a new trial and in his initial brief on appeal.
Discussion
I.
Hall contends that he "was denied the effective assistance of counsel required by the Sixth Amendment [of the United States Constitution] when his attorney refused to participate in his trial." (Hall's brief, p. 9.)
With respect to claims of ineffective assistance of trial counsel, this Court has stated:
"In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel. A defendant has the burden of proving (1) that his counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense. 'To meet the first prong of the test, the petitioner must show that his counsel's representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel's assistance was reasonable, considering all the circumstances.' Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987). ' "This court must avoid using 'hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances *766 surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance." ' Lawhorn v. State, 756 So.2d 971, 979 (Ala.Crim.App.1999) (quoting Hallford v. State, 629 So.2d 6, 9 (Ala.Crim.App.1992) ). 'A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' Strickland, 466 U.S. at 689, 104 S.Ct. 2052. As the United States Supreme Court has explained:
" 'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client the same way.'
" Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (citations omitted). To prove prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694, 104 S.Ct. 2052. 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id. at 693, 104 S.Ct. 2052."
Eller v. State, 187 So.3d 1184, 1188 (Ala.Crim.App.2014).
In addition,
"The United States Supreme Court, in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), a decision released the same day as Strickland, recognized certain exceptions to the prejudice requirement. The Supreme Court of Mississippi aptly stated the following concerning the Supreme Court's holding in Cronic:
" 'The Supreme Court has recognized a limited exception to the prejudice requirement when (1) assistance of counsel has been denied completely, (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) counsel is denied during a critical stage of the proceedings. Cronic, 466 U.S. at 658-59, 104 S.Ct. 2039 ; see Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 1240-41, 152 L.Ed.2d 291 (2002)....
" '....'
" Branch v. State, 882 So.2d 36, 65-66 (Miss.2004)."
Hunt v. State, 940 So.2d 1041, 1056 (Ala.Crim.App.2005).
Although given the opportunity to present evidence to support his claim that he was denied the effective assistance of counsel, Hall failed to present any evidence in support of his motion. This Court has held:
"There is no error in a trial court's denial of a motion for new trial where no *767 evidence is offered in support of that motion. Tucker v. State, 454 So.2d 541, 547-48 (Ala.Cr.App.1983), reversed on other grounds, 454 So.2d 552 (Ala.1984) ; McKinnis v. State, 392 So.2d 1266, 1269 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1270 (Ala.1981). The motion itself was unverified and was not accompanied by any supporting affidavits. Consequently, the assertions of counsel contained therein 'are bare allegations and cannot be considered as evidence or proof of the facts alleged.' Thompson v. State, 444 So.2d 899, 902 (Ala.Cr.App.1984) (quoting Daniels v. State, 416 So.2d 760, 762 (Ala.Cr.App.1982) ); Smith v. State, 364 So.2d 1, 14 (Ala.Cr.App.1978). Similarly, statements made by counsel during a hearing on a motion for new trial cannot be considered evidence in support of the motion. Vance v. City of Hoover, 565 So.2d 1251, 1254 (Ala.Cr.App.1990)."
Arnold v. State, 601 So.2d 145, 154-55 (Ala.Crim.App.1992) (emphasis added).
Moreover,
" ' " 'If the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief on [an] ineffective assistance of counsel claim.' " Davis v. State, 9 So.3d 539, 546 (Ala.Crim.App.2008) (quoting Howard v. State, 239 S.W.3d 359, 367 (Tex.Crim.App.2007) ).
" ' " ' "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]. Therefore, 'where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.' " Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir.2000) (en banc) (quoting Williams v. Head, 185 F.3d 1223, 1228 (11th Cir.1999) ).' "
" ' Davis, 9 So.3d at 546 (quoting Grayson v. Thompson, 257 F.3d 1194, 1218 (11th Cir.2001) ).' "
Ex parte Whited, 180 So.3d 69, 75 (Ala.2015).
Here, the record indicates that after Hall was convicted, his new counsel filed an unverified amended motion for a new trial in which he claimed that Hall's "trial counsel was constitutionally ineffective at trial." (C. 133.) Hall's new counsel did not attach any supporting affidavits to that motion. At the evidentiary hearing on that motion, Hall's new counsel recounted the actions of Hall's counsel at trial and claimed that, under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), Hall's trial counsel failed to provide Hall with effective assistance at trial as required by the Sixth Amendment of the United States Constitution. Hall's new counsel, however, did not present any evidence to support his legal arguments. Thus, the only statements the trial court had to consider regarding the circumstances of Hall's ineffective-assistance-of-counsel claim were the assertions by his new counsel. Consequently, there was no evidence for the trial court to consider in support of the motion for a new trial.
Because of this failure to present evidence, the trial court was given no reason to exclude the possibilities that the actions of Hall's trial counsel were strategic and that she exercised reasonable professional judgment. Accordingly, the trial court did not abuse its discretion when it denied Hall's motion for a new trial.
*768 II.
As noted above, the trial court departed from the presumptive sentencing standards and sentenced Hall under the Habitual Felony Offender Act, § 13A-5-9, Ala.Code 1975 ("the HFOA"). Hall argues that the trial court abused its discretion in departing from the presumptive sentencing standards. We disagree.
In Hyde v. State, 185 So.3d 501 (Ala.Crim.App.2015), this Court stated:
"Under the presumptive standards, circuit courts are given 'significant discretion in arriving at sentencing decisions.' Presumptive and Voluntary Sentencing Standards Manual 14 (emphasis added). That 'significant discretion' includes a circuit court's decision to depart from either the durational or dispositional recommendation, or both. The Presumptive and Voluntary Sentencing Standards Manual, however, explains that a durational or dispositional departure 'should be rare' and occur only 'in exceptional cases.' Presumptive and Voluntary Sentencing Standards Manual 24. Before a circuit court chooses to depart from a dispositional or durational recommendation under the presumptive sentencing standards, however, the following procedures must be followed:
" '3. Consideration of Aggravating and Mitigating Factors-The Court must consider all aggravating and/or mitigating factors proven for a sentencing event, but the decision to depart from the presumptive sentence recommendation is in the discretion of the court.
" '....
" '4. Burden of Proof-Aggravating Factors-The prosecutor bears the burden of proving beyond a reasonable doubt that an aggravating factor exists. The defendant is entitled to a jury trial on the existence of any aggravating factor, unless the aggravating factor is admitted by the defendant or both the defendant and the prosecutor waive a jury determination and request the judge alone to decide. It is within the discretion of the trial court whether to bifurcate the trial and sentencing phase of a covered case.
" '....
" '6. Notice-Aggravation-The prosecutor shall give the defendant notice of aggravating factors no less than seven (7) days before trial. Once given, notice is deemed sufficient for any future trial settings. For good cause shown, notice may be given at any time with the consent of the trial court, provided the defendant is given an opportunity to research and rebut the aggravating factor. Notice can be waived.[5 ]
" '....
" '8. Stating Reasons for Departure-The aggravating and/or mitigating factors found as reasons for any departure must be stated in the written sentencing order, even if the departure sentence is the result of a plea agreement and the parties have agreed to the existence of the aggravating and/or mitigating factors.'
"Presumptive and Voluntary Sentencing Standards Manual 24-25 (emphasis added)."
Hyde, 185 So.3d at 511-12. Further, "when reviewing a circuit court's decision *769 to depart from either a dispositional or durational recommendation under the presumptive sentencing standards, this Court will apply an abuse-of-discretion standard of review." Hyde, 185 So.3d at 508. " 'A trial court abuses its discretion only when its decision is based on an erroneous conclusion of law or where the record contains no evidence on which it rationally could have based its decision.' " McCain v. State, 33 So.3d 642, 647 (Ala.Crim.App.2009) (quoting Holden v. State, 820 So.2d 158, 160 (Ala.Crim.App.2001) ).
In the Presumptive and Voluntary Sentencing Standards Manual ("the Standards Manual"), the following are listed as "aggravating factors" that may justify a departure from the presumptive sentencing standards:
• "The crime involved multiple participants in the criminal conduct, and the defendant played a major role in the crime as the leader, organizer, recruiter, manager, or supervisor."
• "The offense was committed for the benefit of, or at the discretion of, any streetgang as defined in Ala.Code 13A-6-26(a), with the specific intent to promote, further, or assist in criminal activity by streetgang members."
• "The defendant was hired or paid to commit the offense."
• "The defendant held public office at the time of the offense and the offense was related to the conduct of the office."
• "The offense involved a fiduciary relationship, including a domestic relationship, which existed between the defendant and the victim."
• "The victim was particularly vulnerable due to age, infirmity, or reduced physical capacity that was known or should have been known to the defendant."
• "The defendant was incarcerated, on pretrial release, on probation or parole, or serving a community corrections sentence at the time the crime was committed, or otherwise under sentence of law."
• "The offender being 18 or more years of age employs, hires, uses persuades, induces, entices, or coerces an individual under 16 years of age to assist in the crime or to assist in avoiding detection or apprehension."
• "The offense involved an attempted or actual taking or receipt of property of great monetary value or damage causing great monetary loss to the victim(s)."
• "The offense involved a high degree of sophistication or planning, occurred over a lengthy period of time, involved multiple victims, or involved a single victim victimized more than once."
• "The commission of the offense created a substantial risk to human health or safety or a danger to the environment."
• "The defendant exposed a child under 17 years of age to criminal conduct and/or endangerment."
• "The defendant was motivated by the victim's actual or perceived race, color, religion, national origin, ethnicity, sexual orientation, or physical or mental disability to commit the offense."
• "The defendant used the identity of another person without authorization to commit the crime."
• "Any other 'aggravating factor' reasonably related to the purposes of sentencing."
Standards Manual 26.
In the instant case, the trial court departed from the presumptive standards based upon the jury's unanimous findings *770 that Hall had committed the offense "within a three-mile radius of a public or private school, college, university, or other educational institution" and "within a three-mile radius of a public housing project owned by a housing authority." (R. 92.) Although the conduct described in §§ 13A-12-250 and -270 is not specifically included in the above list, the list includes a "catchall" provision authorizing a departure based on "any other 'aggravating factor' reasonably related to the purposes of sentencing." On appeal, Hall raises three central challenges to the trial court's decision to depart from the sentencing standards. We address each in turn.
A.
The Standards Manual states that "a necessary element of the most serious offense may not be used as an aggravating factor for the sentencing event." Standards Manual 24 (emphasis added). Hall contends that the trial court's reliance on the facts establishing the applicability of the sentencing enhancements in § 13A-12-250 and § 13-12-270 was an "impermissibl[e] use [ ] [of] 'elements' of [his] offense as aggravating factors in order to depart from the presumptive sentencing [standards]." (Hall's brief, p. 24.) Hall argues specifically that "[b]ecause the enhancements [provided for in §§ 13A-12-250 and -270, Ala.Code 1975,[6] ] extended the range of punishment beyond the statutory maximum, the 'enhancements' were elements of" the conviction for which he was sentenced. (Hall's brief, p. 26.) In support of his claim, Hall cites Alleyne v. United States, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), and Lightfoot v. State, 152 So.3d 445 (Ala.2013). We disagree.
Initially, we note that the Standards Manual does not define "necessary element." It does, however, include the following footnote:
"Some worksheet offenses may be committed in multiple ways. For instance, Unlawful Manufacture of a Controlled Substance in the first degree must have a combination of two of seven identified elements. If a third of the seven elements is proven beyond a reasonable doubt and is an aggravating factor, the use of that element as an aggravating factor is not precluded."
Standard Manual 24 n. 4 (emphasis added).
Hall was convicted of unlawful distribution of a controlled substance, see § 13A-12-211(a), Ala.Code 1975. Section 13A-12-211(a) provides that "[a] person commits the crime of unlawful distribution of controlled substances if, except as otherwise authorized, he or she sells, furnishes, gives away, delivers, or distributes a controlled substance enumerated in Schedules I through V." Thus, neither of the enhancements provided for in §§ 13A-12-250 and -270 is a necessary element of the offense of unlawful distribution of a controlled substance, see § 13A-12-211(a).
Contrary to Hall's assertion, the decisions he cites-Alleyne, supra, and Lightfoot, supra-do not transform the sentencing enhancements under §§ 13A-12-250 and -270 into "necessary elements" the Standards Manual prohibits from being used as "aggravating factors." Rather, those decisions establish that, for purposes of the Sixth Amendment to the United States Constitution, "a fact increasing either end of the sentencing range (the minimum or the maximum) produces a new *771 penalty, constitutes an element of the offense, and must be found by the jury, regardless of what sentence the defendant might have received had a different range been applicable." Lightfoot, 152 So.3d at 450. In other words, Alleyne and Lightfoot stand for the proposition that, to increase a defendant's sentence pursuant to aggravating factors, the Sixth Amendment requires the government to prove to a jury beyond a reasonable doubt that, in addition to committing the acts establishing the elements of the underlying offense, the defendant committed acts that qualify as aggravating factors.[7] Alleyne and Lightfoot do not transform such aggravating factors into "necessary elements" of the underlying offense for purposes of a circuit court's decision to depart from the presumptive sentencing standards.
Accordingly, Hall's arguments in this regard are without merit.
B.
In addition to prohibiting the use of a "necessary element" as an aggravating factor, the Standards Manual prohibits the use of "[w]orksheet scoring factors for the most serious offense." Standards Manual 24. Hall argues that this prohibition applies to the enhancements provided in §§ 13A-12-250 and -270. Hall cites § 12-25-34(c), Ala.Code 1975, which provides that the proposed sentencing ranges for the voluntary guidelines (which preceded the presumptive sentencing standards) were to include "historically based sentence ranges, including all applicable statutory minimums and sentence enhancement provisions, including the Habitual Felony Offender Act, with adjustments made to reflect current sentencing policies." In Hall's view, § 12-25-34(c) makes the enhancements under §§ 13A-12-250 and
-270 "worksheet scoring factors" and, therefore, excludes those provisions from being used as aggravating factors under the presumptive standards. We disagree.
The Standards Manual does not specifically define "worksheet scoring factor," but the two worksheets applicable to Hall's conviction-the "Drug Prison In/Out Worksheet" and the "Drug Prison Sentence Length Worksheet"-have a section entitled "sentencing factors section." Within each "sentencing factors section" on those worksheets are categories with certain "scores" applicable to specifically delineated factors.[8] Neither of those worksheets includes the enhancements found in § 13A-12-250 or § 13A-12-270. Thus, nothing on the worksheets or in the Standards Manual indicates that either of these enhancements is used as a "worksheet scoring factor." Accordingly, Hall's *772 arguments in this regard are without merit.
C.
Finally, Hall contends that the trial court's departure from the sentencing standards is in conflict with the statement in the Standards Manual that "[d]eparture sentences should be rare." Standards Manual 24. Placed in context, the statement cited by Hall is as follows:
"The Standards are designed to provide appropriate recommendations for sentences in covered cases and are presumptive for non-violent covered offenses as defined in Ala.Code [1975,] § 12-25-32. However, in exceptional cases, upon a finding of aggravating and/or mitigating factors, the sentencing court may depart from either a dispositional or durational sentence recommendation or from both. Departure sentences should be rare, with the court following the presumptive recommendation in the vast majority of sentenced cases."
Standards Manual 24.
As noted above, "the decision to depart from the presumptive sentence recommendation is in the discretion of the court." Id. (emphasis added). There is nothing in the record to indicate that the trial court's decision to depart from the presumptive sentencing standards when it sentenced Hall was based on an erroneous conclusion of law or that the record contains no evidence upon which the court rationally could have based its decision. Likewise, there is nothing in the record to indicate that the trial court's departure in Hall's case violated the general admonition in the Standards Manual that "[d]eparture sentences should be rare." Accordingly, Hall has not demonstrated that the trial court abused its discretion in this case.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

The jury unanimously found that Hall had committed the offense "within a three-mile radius of a public or private school, college, university, or other educational institution" and "within a three-mile radius of a public housing project owned by a housing authority." (R. 92.)

The trial court also ordered Hall to pay a $1,000 fine, a $2,000 drug-demand-reduction assessment, a $100 crime-victims-compensation assessment, a $700 bail-bond fee, $40 in restitution, court costs, and, following a remand from this Court by unpublished order, a $100 forensic-services-trust-fund assessment.

Hall, citing the case-action summary, contends in his reply brief that a hearing on his amended motion for a new trial was held on April 4, 2014. The case-action summary, however, indicates only that on March 20, 2014, a hearing was set for April 4, 2014. Contrary to Hall's assertion, there is no entry in the case-action summary on April 4, 2014, indicating that a hearing was held.

Because Hall was sentenced on February 20, 2014, the trial court had until April 21, 2014, to rule on the amended motion for a new trial before that motion was denied by operation of law. See Rule 24.1, Ala. R.Crim. P. ("No motion for new trial ... shall remain pending in the trial court for more than sixty (60) days after the pronouncement of sentence, except as provided for in this section. A failure by the trial court to rule on such a motion within the sixty (60) days allowed by this section shall constitute a denial of the motion as of the sixtieth day.").

Hall does not claim that the State failed to provide him sufficient notice of aggravating factors; we note, however, that the record indicates that the State filed a written notice of aggravating factors more than seven days before Hall's trial.

Section § 13A-12-250, Ala.Code 1975, provides a five-year enhancement if the offense took place within a three-mile radius of a school; § 13A-12-270, Ala.Code 1975, provides a five-year enhancement if the offense took place within a three-mile radius of a public-housing project.

As noted above, the jury unanimously found that Hall had violated §§ 13A-12-250 and
-270, and thus triggered the statutorily imposed penalties of additional five-year terms of imprisonment for each violation. (R. 92.)

The "Drug Prison In/Out Worksheet" has the following scoring factors: (1) "Most Serious Conviction Offense"; (2) Number of Prior Adult Felony Convictions"; (3) "Number of Prior Adult Convictions for Misdemeanors or Violations"; (4) "Prior Incarceration with Unsuspended Sentence Imposed of 1 Year or More"; (5) "Prior Felony Probation or Parole Revocation"; (6) "Number of Prior Juvenile Delinquency or YO Adjudications (Violation/Misd/Felony)"; and (7) "Possession/Use of a Deadly Weapon or Dangerous Instrument." Standards Manual 33.
The "Drug Prison Sentence Length Worksheet" has the following scoring factors: (1) "Most Serious Conviction Offense"; (2) "Number of Additional Felony Convictions (Including Counts)"; (3) "Number of Prior Adult Felony Convictions"; (4) "Number of Prior Adult Felony Class C Convictions"; and (5) "Prior Incarceration with Unsuspended Sentence Imposed of 1 Year or More." Presumptive and Voluntary Sentencing Standards Manual 35.